# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 22, 2003

## STATE OF TENNESSEE v. PATRICK J. GRAY

### Direct Appeal from the Criminal Court for Cumberland County
### No. 5831    Lillie Ann Sells, Judge

### No. E2002-01003-CCA-R3-CD
### September 30, 2003

The appellant, Patrick J. Gray, pled guilty in the Cumberland County Criminal Court to vehicular homicide and was placed on judicial diversion. During his probationary period, the appellant violated the terms of his probation. Accordingly, the trial court revoked the appellant's probation and ordered him to serve a six-year sentence in the Tennessee Department of Correction. On appeal, the appellant complains that the trial court erred in its rulings during the probation revocation hearing. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Randall A. York, Crossville, Tennessee, for the appellant, Patrick J. Gray.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William E. Gibson, District Attorney General; and Gary S. McKenzie, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant pled guilty on April 27, 2000, to vehicular homicide by recklessness, a Class C felony. The trial court entered an order placing the appellant on judicial diversion pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(A) (1997). In accordance with the terms of the plea agreement, the trial court ordered that the appellant serve the first year of judicial diversion in Community Corrections followed by five years of supervised probation. The trial court also ordered the appellant to perform 500 hours of community service.

The appellant successfully completed his community corrections service and was placed on supervised probation on April 27, 2001. Subsequently, on January 14, 2002, a violation of probation report was filed, alleging that the appellant had violated the terms of his probation and judicial diversion. The report alleged that the appellant had been arrested on January 7, 2002, for fraud after attempting to forge a prescription. The report also alleged that the appellant had violated his probation by using or being in possession of narcotic drugs and by failing to provide his probation officer a computer printout from his pharmacy showing his prescriptions.

Lisa Smith, the appellant's probation officer, testified at the revocation hearing that when the appellant was placed under her supervision, they reviewed the terms of his probation and she had him sign "some regular rules of probation." Additionally, Smith noted that the appellant previously "signed the rules on the original judicial diversion order and we discussed these." Smith stated that the appellant had violated the terms of his probation by being arrested for "fraud, forgery of a prescription," by failing to provide her a pharmacy printout showing his prescriptions, and by possessing and/or using narcotic drugs.

On cross-examination, Smith acknowledged that the appellant had passed every drug screen he had taken, had completed 500 hours of community service, and had paid his fines and costs. Indeed, due to the appellant's satisfactory performance, Smith had allowed him to report every other month instead of monthly. Smith was aware that the appellant had "a bad back" and leg cramps. He was also taking medication to help him deal with the death of one of his children.

Smith recalled that on the morning of his arrest for fraud, the appellant called her at approximately 8:00 a.m. He expressed concern that he was developing an addiction to prescription drugs and related that he had called a rehabilitation treatment center in Atlanta regarding admission. Later that morning, around 10:00 or 11:00 a.m., the appellant attempted to obtain the narcotic drug Oxycontin by utilizing a forged a prescription. Thereafter, the appellant pled guilty to a reduced charge of attempted simple possession, a Class B misdemeanor.

At the conclusion of the hearing, the trial court revoked the appellant's probation and ordered him to serve six years in confinement. On appeal, the appellant raised the following issues for review: (1) whether the trial court erred in revoking his judicial diversion and by requiring him to serve his entire sentence in the Tennessee Department of Correction; (2) whether the trial court erred by not sentencing the appellant to "straight probation" or to a sentence of split confinement; and (3) whether the judgment was properly entered.

## II. Analysis

Without addressing the merits of the appellant's claims, we note that the record before this court does not contain the transcript of the appellant's guilty plea hearing. The record reflects that the appellant and the State entered into an agreement whereby the appellant would plead guilty to vehicular homicide and be placed on judicial diversion. Our review of the appellant's complaints

centers around the nature of the plea and the conditions imposed by the trial court in connection with that plea.

At the revocation hearing, the trial court discussed the circumstances surrounding the appellant's plea and the grant of judicial diversion. The court stated that it remembered the case "very, very well." Specifically, the court noted that "the state brought in District Attorney General Gibson to represent the state in that negotiation and convinced this court, and I'm going to say for the record and I've said I believe on the record that the court was reluctant to take that arrangement for that case. I believe the record indicates or reflects at that time that this court had a discussion with Mr. Gray, a very serious discussion with Mr. Gray about his opportunity that he had been given."

From the record before us, we are unable to determine the exact nature or terms of the agreement between the appellant and the state. We are also not privy to any of the discussions between the appellant and the trial court during the proceedings. As we have noted, the transcript of the hearing, which is essential for appellate review, was not included in the record for our review. Therefore, because of the inadequate record, we are unable to address the issues raised by the appellant.

The appellant bears the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. See Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). In the absence of an adequate record on appeal, this court must presume that the trial court's ruling was correct. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); State v. Jones, 623 S.W.2d 129, 131 (Tenn. Crim. App. 1981). Thus, we must presume that the judgment of the trial court is correct.

### III. Conclusion

Accordingly, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-3-