# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 10, 2004 Session

## STATE OF TENNESSEE v. DEE W. THOMPSON

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-C-1955     Seth Norman, Judge**

---

### No. M2003-01149-CCA-R3-CD - Filed June 23, 2004

---

The appellant, Dee W. Thompson, was convicted by a jury in the Davidson County Criminal Court of three counts of aggravated rape. He was sentenced to life imprisonment without the possibility of parole. On appeal, the appellant challenges the sufficiency of the evidence supporting his convictions, the trial court's rulings regarding the admissibility of prior testimony, and the qualification of a witness to testify as an expert. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Dee W. Thompson.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Pamela Anderson and Carlton Drumwright, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background[1]

On Friday, June 13, 1997, the victim's boyfriend, Mark Erickson, drove the victim to the home of her friend, Donna Preston in Nashville. The victim planned to spend the weekend with Preston while Erickson took their daughter to visit his family in Wisconsin. The victim and Erickson

---

[1] The petitioner was previously convicted of three counts of aggravated rape based upon the series of events detailed in this opinion. However, due to the inappropriate admission of certain evidence, this court reversed the appellant's convictions and remanded for new trial. See State v. Thompson, 36 S.W.3d 102, 114 (Tenn. Crim. App. 2000). The instant opinion concerns the retrial for these offenses.

engaged in sexual relations prior to his departure. The following Monday morning, June 16, 1997, Preston drove the victim to visit the mother of a friend with whom the victim had been incarcerated. After the visit, the victim began walking back to Preston's residence.

On the way to Preston's residence, the victim encountered her friend Diana at approximately 10:00 or 11:00 a.m. Diana told the victim, a recovering drug addict, that she had some crack cocaine in her possession. The two women went to Diana's room at the Trinity Inn and smoked the crack cocaine. The victim, feeling guilty for relapsing into drug usage, told Diana that she needed to get to Preston's residence because her daughter was on her way there. The victim left the Trinity Inn and resumed her walk to Preston's residence.

Around 3:00 p.m., after walking approximately four miles, the victim neared the home of the appellant. The victim knew the appellant and had previously used crack cocaine at his house. Because Preston's residence was eight or nine miles away, the victim decided to ask the appellant for a ride. Elmore Electric, the business where the appellant worked, was located in front of the appellant's house on Cherokee Avenue. As she approached the business, the victim saw the appellant walk out of the plant. They began talking, and the victim explained her plight. The appellant gave the victim a beer and told her she could wait in his house for a few minutes until he finished work.

The victim entered the appellant's house and sat on the couch. Soon thereafter, the appellant came in and sat beside her. After making small talk, the appellant ordered the victim to undress. The victim did not comply, believing that the appellant was not serious. When the victim did not obey, the appellant pulled a wooden stick with a metal tip from the couch and struck the victim across her right eye, dazing her. He grabbed the victim by the hair and dragged her into his bedroom. In the bedroom, the appellant forced his penis into the victim's mouth, vagina, and rectum.

Afterward, the appellant instructed the victim to dress. Wanting to escape the house, the victim asked the appellant if he would like to purchase crack cocaine. The appellant replied in the affirmative. The appellant and the victim got into the appellant's car, and the appellant drove to a crack house located approximately one mile from the appellant's house. When the appellant stopped in front of the crack house, there were several people standing outside. The victim, unable to open the passenger door of the car, crawled across the appellant, exited on the driver's side, and ran for help.

Ultimately, a young couple stopped to help the victim. The couple drove her to a Circle K store at the intersection of Trinity Lane and Dickerson Road. Once inside, the victim requested that the clerk call police. Soon, police arrived, and the victim told them of her ordeal. The victim agreed to show police the location of the appellant's house prior to going to the hospital. Police arrested the appellant and sent a crime scene unit to the house to collect evidence. In the bedroom, police found that the sheets and a pillowcase on the appellant's bed were spotted with blood. Also in the bedroom, police discovered a tube of "Stay Hard," a desensitizing lubricant used to prevent

premature ejaculation. A stick with a metal tip was also found in the house. Additionally, in a trash can police found condoms, condom wrappers, and bloody tissue.

After showing police the location of the appellant's house, the victim was taken to Metro General Hospital where rape kit testing was completed. The victim arrived at the hospital at 3:20 a.m. and was released at 5:05 a.m. Medical personnel observed that the victim's clothing was "messed up" and her right eye was puffy and was marred by a purple bruise. The victim had additional bruises on her left arm and hip. Near her right armpit was a six inch scratch, both knees were scraped, and there was a "[p]uncture mark to [her] right antebrachium."

During the pelvic exam, a Woods' light was used to illuminate the presence of semen. The light detected semen on the victim's labia and perirectal area. There was further bruising on the outer vaginal area. Swabs were taken of the victim's oral, vaginal, and rectal areas.

The rape kit was sent to the Tennessee Bureau of Investigation (TBI) crime laboratory for testing. No sperm or semen was detected on the victim's oral swab. However, semen was detected on the vaginal and rectal swabs. Both swabs indicated multiple contributors. On the vaginal swab, the major contributor was the victim. However, there was insufficient DNA to determine the identity of the minor contributor. DNA on the rectal swab was consistent with the appellant. The sample also contained DNA belonging to an unidentified contributor, but the DNA excluded the victim as the donor. The TBI laboratory also determined that the blood on the tissues and the sheets obtained from the appellant's house belonged to the appellant.

Additionally, the toxicology screen of the victim's blood revealed the presence of cocaine, amphetamine, and benzodiazapine. The victim reported that she was taking Adavan, a medication for anxiety, explaining the presence of benzodiazapine. Testing also revealed that the victim suffered from Trichomonas and bacterial vaginosis. She was given medication to treat the Trichomonas, as well as any other sexually transmitted disease which she could have contracted from the assault.

Based upon the foregoing facts, the appellant was found guilty of three counts of aggravated rape. The appellant, a repeat violent offender, was sentenced to concurrent sentences of life imprisonment without the possibility of parole. On appeal, the appellant contests the sufficiency of the evidence, the trial court's refusal to admit evidence from the preliminary hearing, and the trial court's qualification of the TBI forensic scientist as an expert.[2]

## II. Analysis

### A. Preliminary Hearing Testimony

---

[2] We will address these issues in a different order than that in which they were raised on appeal.

The appellant complains that "[t]he trial court erred in not admitting the prior inconsistent statements and/or perjured statements of the alleged victim." At trial, the appellant attempted to admit the victim's testimony at the preliminary hearing, arguing that this testimony showed that the victim had been untruthful at the hearing. Specifically, the appellant contends that at the preliminary hearing, the victim testified that her only conviction was for driving under the influence (DUI), and that she had a pending DUI charge. The appellant argues that "[t]he facts were that she had numerous convictions over the years, one a felony theft and the others various and sundry misdemeanors."

On appeal, the appellant did not include the preliminary hearing transcript for our review, nor did he make an offer of proof at trial. The appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). Without the transcript, we are unable to review this issue. In the absence of a complete record, we must presume that the trial court ruled correctly. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Accordingly, the appellant has waived further review of this issue.

## B. Expert

The appellant also asserts that "[t]he trial court erred in accepting the witness Samera Zavaro as an expert in the field of DNA testing." Generally, "[q]uestions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court." State v. Stevens, 78 S.W.3d 817, 832 (Tenn. 2002). As such, we will not overturn the trial court's determination absent an abuse of discretion. Id.

Tennessee Rule of Evidence 702 provides, "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." In the instant case, the trial court allowed Zavaro, the TBI forensic scientist who performed the DNA testing on the items from the appellant's home and the victim's rape kit, to testify as an expert witness. Zavaro testified that she received a Bachelor of Science degree from Eastern Kentucky University, majoring in forensic science. To satisfy the requirements of her major, she interned for sixteen weeks at the TBI crime laboratory in Nashville. Beginning in 1991, Zavaro worked as a special agent forensic scientist at the TBI crime laboratory in Nashville until she was promoted in 1998 to supervisor of the TBI crime laboratory in Memphis. She recounted that she had completed serology and DNA courses at the FBI and was a member of the Southwestern Association of Forensic Scientists and the American Academy of Crime Laboratory Directors. Additionally, Zavaro noted that she had previously testified as an expert fifty or fifty-five times.

The appellant objected to the qualification of Zavaro as an expert, arguing that she did not possess the "education and background or expertise to be considered an expert" because "she doesn't

hold a doctorate in any of the major areas that form the basis of this science." The trial court overruled the appellant's objection.

Our supreme court has observed that an expert witness "may acquire the necessary expertise through formal education or life experiences." State v. Reid, 91 S.W.3d 247, 302 (Tenn. 2002), cert. denied, __ U.S. __, 124 S. Ct. 56 (2003). Additionally, "the witness must have such superior skill, experience, training, education, or knowledge within the particular area that his or her degree of expertise is beyond the scope of common knowledge and experience of the average person." Id. In the instant case, Zavaro was clearly qualified to testify as an expert. See State v. Robert Simerly, No. E2002-02626-CCA-R3-CD, 2004 WL 443294, at *8 (Tenn. Crim. App. at Knoxville, Mar. 11, 2004), application for perm. to appeal filed, (May 6, 2003). Thus, the trial court did not abuse its discretion in overruling the appellant's objection to Zavaro's testimony.

## C. Sufficiency of the Evidence

The appellant claims that the evidence is not sufficient to support his convictions. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no "reasonable trier of fact" could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant was convicted of three counts of aggravated rape of the victim. Aggravated rape is defined as unlawful sexual penetration of a victim by the appellant when force or coercion is used to accomplish the act and the appellant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon. See Tenn. Code Ann. § 39-13-502(a)(1) (1997).

In the instant case, the victim testified that the appellant ordered her to undress, then struck her with a wooden stick with a metal tip when she failed to comply. He dragged her by her hair to his bedroom where he, without her consent, inserted his penis into her mouth, vagina, and rectum. At the hospital, medical personnel noted that the victim's clothing was disheveled, and she had several bruises, including a significant bruise around her right eye. A Woods' light revealed the presence of semen on her vaginal and rectal areas. A rectal swab of the victim contained DNA consistent with the appellant's DNA. Further, upon searching the appellant's house, police found

a wooden stick with a metal tip that matched the description given by the victim. We conclude that, taken in the light most favorable to the State, this evidence is sufficient to sustain the appellant's convictions. See State v. Thompson, 36 S.W.3d 102, 107-08 (Tenn. Crim. App. 2000).

### III.  Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE