IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 13, 2004 Session

**CHARLES ORLANDO FIELDS v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Obion County**
**No. 3-03    William B. Acree, Jr., Judge**

_____

**No. W2003-02051-CCA-R3-PC  - Filed June 23, 2004**

_____

The petitioner, Charles Orlando Fields, was found guilty by a jury in the Obion County Circuit Court of one count of selling .5 grams or more of a substance containing cocaine within one thousand feet of a school zone.  The petitioner was sentenced to thirty-three years incarceration in the Tennessee Department of Correction.  Subsequently, the petitioner filed a petition for post-conviction relief, alleging that he received the ineffective assistance of trial counsel.  After an evidentiary hearing, the post-conviction court found that the petitioner's claims were waived and that regardless of waiver, the petitioner failed to prove prejudice.  The petitioner appeals.  Upon our review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

John W. Palmer and Jason L. Hudson, Dyersburg, Tennessee, for the appellant, Charles Orlando Fields.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; and Thomas A. Thomas, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The petitioner was indicted by an Obion County Grand Jury on one count of selling .5 grams or more of a substance containing cocaine within one thousand feet of a school zone and one count of delivering .5 grams or more of a substance containing cocaine within one thousand feet of a school zone.  Counsel was appointed (hereinafter "appointed counsel"), and a trial was held on the charges on April 19, 2000.  The jury was unable to reach a verdict, resulting in a mistrial.

Subsequently, the petitioner retained counsel (hereinafter "retained counsel"), and a second trial was held on August 14, 2000. At trial, the State presented the testimony of two women who bought crack cocaine from the petitioner. The first witness, Amanda Bell, testified that she had been working as an undercover agent when she assisted the confidential informant, Kim Hamlin, in purchasing crack cocaine from the petitioner. Bell asserted that the petitioner was an African-American male, but she did not discover his name during the purchase. However, Bell stated that at the time of the purchase the petitioner had a gold tooth. Bell acknowledged that she did not know if the petitioner currently had a gold tooth, but she maintained that a removable gold tooth could be inexpensively and easily purchased from a nearby beauty supply store.

Hamlin, a known drug user, testified that while she worked as a confidential informant with the Twenty-seventh District Drug Task Force, she and Bell purchased crack cocaine from the petitioner. Hamlin alleged that she did not see the petitioner with a gold tooth. Regardless, Hamlin positively identified the petitioner as the person who sold the drugs to her and Bell.

The petitioner and his mother testified that the petitioner never had a gold tooth. Additionally, the petitioner specifically denied selling drugs to Bell and Hamlin.

At the conclusion of the second trial, the petitioner was found guilty of both counts of the indictment. However, the trial court merged the delivery conviction into the sale conviction. Prior to the sentencing hearing, retained counsel moved to withdraw from representing the petitioner, citing that the petitioner had filed a grievance against him. The trial court granted retained counsel's motion to withdraw and substituted appointed counsel.

After the sentencing hearing, the trial court sentenced the petitioner, as a Range II multiple offender, to thirty-three years incarceration. Following sentencing, the petitioner filed a motion for new trial. In the motion, the petitioner raised several issues for review, including the ineffectiveness of retained counsel. At the hearing on the motion for new trial, the petitioner testified concerning the specific instances of ineffectiveness. The trial court determined that the petitioner had failed to prove prejudice and denied the motion. The petitioner appealed to this court, neglecting to raise the issue of the ineffectiveness of retained counsel. On appeal, this court affirmed both the petitioner's convictions and sentences. See State v. Charles Orlando Fields, No. W2001-00124-CCA-R3-CD, 2002 WL 1558575, at *1 (Tenn. Crim. App. at Jackson, Jan. 2, 2002).

Subsequently, the petitioner filed a petition for post-conviction relief, again alleging that he received the ineffective assistance of retained counsel. At the post-conviction hearing, retained counsel stated that he represented the petitioner at the second trial. Retained counsel was licensed to practice law in 1972, spent ten years practicing in Texas, and also practiced in Kentucky. The remainder of his practice was in Tennessee. Retained counsel asserted that he practiced criminal law "from the beginning."

Retained counsel stated that he met with the petitioner two or three times prior to trial. He maintained that his file regarding the petitioner's case did not reflect the extent of the work he

performed in the case because he "was taught in the Texas Criminal Defense Lawyers Association" that he should "not write everything down because it could be subpoenaed." Counsel asserted that he and the petitioner discussed that the charges alleged that the offense occurred within one thousand feet of a school zone. He also discussed with the petitioner all plea offers and sentencing concerns.

Retained counsel stated that he interviewed witnesses prior to trial, but he did not interview the witnesses suggested by the petitioner. He explained that the petitioner did not provide him with the contact information for the suggested witnesses, and the petitioner had not paid him enough money to hire an investigator. Retained counsel stated that he did not petition the court for additional funds for an investigator because, from his experience practicing in Texas, such motions were always denied. Retained counsel acknowledged that he could not name the witnesses he interviewed, but he alleged that he was able to find any necessary information from the "grapevine."

Retained counsel maintained that he spoke with appointed counsel regarding the petitioner's first trial. Appointed counsel told retained counsel that there was little discovery to be had in the petitioner's case. Accordingly, retained counsel never pursued discovery from the State.

When asked if he ever researched the events of the petitioner's first trial, retained counsel stated, "I read it, some. Not a transcript, but I just read the records, you know, the arrest warrants and just things like that." Retained counsel admitted that because he did not review the petitioner's first trial, he was unaware that the petitioner, the petitioner's mother, and three other witnesses, namely Derrell Snow, Reverend Albert E. McCadney, and Stacy McEwen, had testified at the first trial that the petitioner never had a gold tooth. Retained counsel alleged that the petitioner could not afford to have the first hearing transcribed.

Retained counsel alleged that he could not specifically recall jury selection in the petitioner's case. However, he admitted that he may have excluded African-Americans from the jury because "[o]ther people are hard on us, but black people are harder on black people than anybody else in the world."

Retained counsel stated that Hamlin did not testify at the first trial, but she did testify at the second. Additionally, Bell testified at both trials. Retained counsel opined that, as a witness, "one [of the women] was super." Retained counsel also opined that all of the State's witnesses were "strong."

Retained counsel stated that he did not recall at trial referring to the photographs included in the lineup as "mug shots." He further stated that he "never thought about" such a comment implying that the petitioner had a criminal history.

Finally, retained counsel explained that, following the petitioner's trial, he "disassociated" himself from the petitioner. Retained counsel did so because the petitioner filed a "complaint with the grievance committee in Nashville."

Appointed counsel testified at the post-conviction hearing that he represented the petitioner at his first trial, and again at the sentencing hearing and motion for new trial following the second trial. However, a contract public defender represented the petitioner on appeal. Appointed counsel acknowledged that he raised the issue of the ineffective assistance of retained counsel in the petitioner's motion for new trial, but the issue was not pursued on appeal. Appointed counsel explained that he raised the issue of the ineffective assistance of retained counsel "to accomplish some judicial economy."

Appointed counsel stated that Bell testified at the petitioner's first trial, while both Bell and Hamlin testified at the second trial. Bell testified that she bought crack cocaine from the petitioner and that he had a gold tooth. At the first trial, appointed counsel called the petitioner; the petitioner's mother; the petitioner's pastor, Reverend McCadney; the petitioner's boss, Stacy McEwen; and Derrell Snow to testify that the petitioner never had a gold tooth. Appointed counsel stated that at both trials, the State, through Bell, demonstrated how easily a fake gold tooth could be obtained. Additionally, McEwen testified that the petitioner was working for him on the day of the drug purchase, but McEwen could not affirmatively state the time frame that the petitioner worked that day. Appointed counsel recalled that McEwen had an extensive criminal history.

The petitioner testified at the post-conviction hearing that he completed the tenth grade and had the ability to read and write. He explained that Rose Cannon referred him to retained counsel. The petitioner claimed that prior to trial he and retained counsel met twice in person and had one telephone discussion. The petitioner gave retained counsel the names of McEwen, Reverend McCadney, and Snow. The petitioner explained that he told retained counsel that Reverend McCadney's church was in Union City and would be easily located. Additionally, he informed retained counsel that "you can ask anybody where [Snow] lives." However, the petitioner admitted that he did not know how to locate McEwen. The petitioner alleged that the discussion of witnesses was the only conversation he had with retained counsel in reference to his case.

The petitioner stated that he did not meet with appointed counsel prior to sentencing and complained that no one explained sentencing to him. Additionally, the petitioner maintained that he never spoke with appellate counsel.

The petitioner contended that the indictment charging him with selling crack cocaine in a school zone was inadequate. He explained, "I didn't know it was the school zone. All it say is a thousand feet of some school, and T.C.A. No. 39-17-417(a)[(3)] is the actual charge of sale of Count I . . . . So, I don't feel that I was put in notice of the school zone." The petitioner remarked that "you cannot see the school from the house. I didn't know it was a school there." Accordingly, the petitioner felt that retained counsel was ineffective for failing to challenge the sufficiency of the indictment.

After the post-conviction hearing, the post-conviction court issued a written order, detailing the court's conclusions of law and findings of fact. The post-conviction court stated that retained

counsel "may have been deficient" in his representation of the petitioner, but the petitioner failed to prove that he suffered any prejudice by the representation. Additionally, the post-conviction court remarked:

> There is one additional reason why the petition should be dismissed. The issue of ineffective assistance of counsel was raised by the petitioner in his motion for new trial. As previously stated, petitioner's [retained] counsel withdrew after the trial and the public defender's office [through appointed counsel] thereafter represented the petitioner. In his motion for new trial, the petitioner asserted that there were matters that were not done by [the petitioner's] counsel that resulted in ineffective assistance of counsel.
>
> The order denying the motion for judgment of acquittal and motion for new trial provided [that the petitioner had failed to prove prejudice].
>
> The issue of ineffective assistance of counsel has previously been litigated. Although that issue was not raised on direct appeal, it could have been.

On appeal, the petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

It is without question that issues that have been previously determined cannot support a basis for post-conviction relief. See Tenn. Code Ann. § 40-30-106(f) (2003); Harris v. State, 947 S.W.2d 156, 174 (Tenn. Crim. App. 1996). "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present

evidence, regardless of whether the petitioner actually introduced any evidence." Tenn. Code Ann. § 40-30-106(h).

In the instant case, the petitioner raised and litigated the claim of the ineffective assistance of retained trial counsel in his motion for new trial. In doing so, the petitioner proceeded at his peril. See Mohammed F. Ali v. State, No. E2001-00183-CCA-R3-PC, 2003 WL 1877242, at *22 (Tenn. Crim. App. at Knoxville, Apr. 11, 2003), perm. to appeal denied, (Tenn. 2003). Accordingly, this issue has been previously determined and may not be addressed in the petitioner's post-conviction proceeding. Moreover, we note that in his post-conviction petition the petitioner raised factual bases for his claim of ineffective assistance of retained counsel that he did not initially raise in his motion for new trial. However, ineffective assistance of counsel generally constitutes a single ground for relief. See Thompson v. State, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997). Accordingly, the petitioner may not seek to relitigate the previously determined issue simply by providing additional factual allegations. See Cone v. State, 927 S.W.2d 579, 582 (Tenn. Crim. App. 1995). Therefore, the post-conviction court properly denied the petitioner's claims of the ineffective assistance of retained trial counsel on this basis.

We note that while the petitioner's claims regarding his retained trial counsel have previously been determined, any claims regarding the ineffective assistance of appointed counsel who assisted during the motion for new trial stage or the appellate counsel who drafted the petitioner's direct appeal have not been so previously determined. However, this issue was not addressed in the petition for post-conviction relief. An issue raised for the first time on appeal is considered waived. See State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Moreover, the petitioner failed to support his claim in his appellate brief with any citation to authority, which also constitutes a ground for waiver. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7). Regrettably, we may not address this issue for the first time on appeal.

### III.  Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE

-6-