# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 21, 2012

## STATE OF TENNESSEE v. ABBAS H. NEJAT A.K.A. ABBAS H. NEJAD

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-C-2274      Steve R. Dozier, Judge**

---

**No. M2010-00783-CCA-R3-CD - Filed October 24, 2012**

---

A Davidson County Criminal Court Jury found the appellant, Abbas H. Nejat a.k.a. Abbas H. Nejad, guilty of retaliation for past action, a Class E felony. The trial court sentenced the appellant to six years in the Tennessee Department of Correction. On appeal, the appellant challenges the sufficiency of the evidence sustaining his conviction. The appellant also challenges the trial court's ruling regarding the admissibility of evidence concerning the appellant's membership in the Kurdish Pride Gang. Finally, the appellant challenges the sentence imposed by the trial court. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Paul Julius Walwyn, Madison, Tennessee, for appellant, Abbas H. Nejat a.k.a. Abbas H. Nejad.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Marie Sobrero and Jennifer McMillen, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

This case resulted from the appellant's making a threatening telephone call to a witness in a prior matter. At trial, Metropolitan Nashville Police Detective Lee Freeman

testified that in late 2006, brothers Aso and Ako Nejat planned retaliation against Darien Coleman and Brian Woods, who had robbed them.[1]  See State v. Aso Hassan Nejad, No. M2009-00481-CCA-R3-CD, 2010 WL 3562015, at *1 (Tenn. Crim. App. at Nashville, Sept. 14, 2010), perm. to appeal denied, (Tenn. 2011).[2]  At Ako's instruction, Delsosh Ahmed called Coleman and Woods to lure them to Edwin Warner Park with the promise of a drug deal.  Brushsa Salee was parked there as the "bait," while Aso, Ako, and Nejee Benjuja waited in the tree line to shoot Coleman and Woods.  However, before Coleman and Woods arrived, Officer Jim Spray patrolled the area and approached Salee.  Salee, who was on probation and had a gun in the passenger seat of his car, quickly drove away.  Officer Spray pursued in his vehicle. Salee wrecked his car and ran away; he was apprehended later that night.  When Officer Spray stepped out of his car, he discovered numerous bullet holes in his vehicle.

Detective Freeman testified that after the perpetrators involved were apprehended, Ahmed agreed to testify against Ako and Aso.  Detective Freeman said the trial began on Monday July 14, 2008, and lasted three days.  At around 4:30 p.m. on Wednesday July 17, 2008, the jury found Ako guilty of conspiracy to commit first degree murder.  Aso was found guilty of conspiracy to commit first degree murder and attempted second degree murder.  Later that night, either Detective Mark Anderson or District Attorney General Rob McGuire informed Detective Freeman that Ahmed had received threatening telephone calls.

Delsosh Ahmed testified that he was originally from Iraq and that he had been in Nashville since 2003.  He said that he was friendly with other members of the Kurdish community and that all members of the community knew each other.  He had had frequent contact with the appellant and had spoken with him on the telephone.  He said that he believed the appellant was the cousin of Ako and Aso.

Ahmed said that after the Edwin Warner Park incident, he was arrested and was appointed trial counsel.  After negotiations, Ahmed agreed to testify against Ako and Aso. Following his testimony, Ahmed entered a guilty plea to conspiracy to facilitate aggravated robbery and received a five-year probationary sentence.  Ahmed confirmed that his trial testimony mirrored the version of events related by Detective Freeman.  Additionally, he testified that he left before the shooting because he got scared.  Ahmed recalled that he

---

[1]  Some of the witnesses in this case share a surname.  Therefore, for clarity, we have chosen to utilize their first names.  We mean no disrespect to these individuals.

[2]  In the direct appeal of Ako and Aso Nejat, their surname was spelled "Nejad."  However, we will utilize the spelling employed in the instant case.

testified the day before the verdict was returned and that nothing happened the night of his testimony.

The following day, July 17, 2008, Ahmed went to work at Azido's Tight Whips, which sold automobile accessories. That afternoon, he received three threatening telephone calls, one of which was made by the appellant.[3] Ahmed said that when the appellant called, the appellant "told [me] that he was going to kill [me] because [I] snitched on [the appellant's] brother." Ahmed stated that although he could not remember the exact words used, he definitely recalled that his life was threatened and that the call scared him.

Ahmed said that after the calls, he telephoned the police and his attorney. Additionally, because he wore an ankle monitor as part of his probationary sentence, he called the "monitoring people" to obtain permission to go home early. After being granted permission to leave, Ahmed went home around 5:00 p.m. Thereafter, a policeman came to his home, and Ahmed told the officer about the threatening calls. Ahmed said that after the calls, he left Tennessee. He explained, "I wouldn't have left the state if it wasn't that serious."

On cross-examination, Ahmed acknowledged that he could not recall the order in which the threatening calls were received. However, he recalled that the telephone call from the appellant "was real threatening."

On redirect examination, Ahmed stated that he was not a member of the Kurdish Pride Gang but that the appellant, Ako, and Aso were members. Ahmed acknowledged that a person did not have to be a member of the gang or be "affiliated" with the gang in order to "hang out" with the members. Ahmed said that at one time he stored the appellant's telephone number in his cellular telephone and that he used to be familiar with the number. However, at the time of trial, he could not remember the appellant's telephone number. He maintained that at the time of the threatening call, he recognized that the call was coming from the appellant's telephone number. He recalled that the appellant had come to Ahmed's mother's house a couple of days before Ako and Aso's trial to "make sure [Ahmed] wouldn't talk."

Officer Richard Michael Wilson testified that around 6:50 p.m. on July 16, 2008, he responded to Ahmed's residence at 4911 Pearson Place because of Ahmed's complaint of threatening telephone calls. Ahmed told Officer Wilson that he had received threatening

---

[3] The appellant had two co-defendants who were charged for the other two calls, namely the appellant's brother, Mohammad Nejad, and Feriya Yuzdanparast. We have limited our recitation of the facts adduced at trial to those relating to the appellant.

telephone calls from family members of people whom he had testified against earlier that day. Ahmed said that around 4:40 p.m., the appellant called from telephone number (615) 589-5371 and said, "You testified against my brother, I'm going to kill you." Officer Wilson recalled that Ahmed was "scared," "twitchy," and "honestly nervous." Ahmed insisted that they speak near the officer's car because he feared for his family's safety.

Jim Merkling, an employee of Cricket Communications, testified that Ahmed's cellular telephone records reflect that at 4:39 p.m. on July 16, 2008, Ahmed received a telephone call from (615) 593-1578. Merkling said that the number from which the call originated belonged to a subscriber named Amir Nejad, whose address was 661 North Sugar Mill Drive in Nashville. Merkling also confirmed that following that call, Ahmed called the police.

Detective Mark Anderson testified that he worked with the Metropolitan Nashville Police Department's gang unit. The trial court allowed Detective Anderson to testify as an expert in the Kurdish Pride Gang. Detective Anderson said that the Kurdish community was tight knit and acted as "a city within a city." He explained, "They have their own businesses, they interact with themselves quite often." He said that the gang members were very close, considered each other to be family, and called each other brothers. He stated that the leaders of the gang were the older members and that they were known as "OG's, or original gangsters." The appellant, Ako, and Aso were the "[m]ost prevalent" OG's. Detective Anderson said that Ako and Aso were brothers and that the appellant was their cousin.

Detective Anderson testified that Ahmed told him that following Ako and Aso's trial, he received a telephone call from the appellant, during which the appellant threatened to kill him. Detective Michael Gooch arrested the appellant at the appellant's residence at 661 Sugar Mill Road, then the appellant was taken to the Criminal Justice Center (CJC). After the appellant arrived at the CJC, Detective Anderson told the appellant that he had been arrested because of allegations that the appellant had threatened someone after a trial the week before. The appellant responded that he had not called anyone. When Detective Anderson said that he had not mentioned a telephone call, the appellant asked to speak to his attorney.

Detective Anderson said that he reviewed the cellular telephone records associated with (615) 589-5371, the origin of the threatening call Ahmed had attributed to the appellant. The records reflected that the number was registered to Amir Hasan, the appellant's brother, who lived at 661 Sugar Mill Drive.

-4-

On cross-examination, Detective Anderson acknowledged that Ahmed was never physically assaulted. He also acknowledged that he did not know if Detective Gooch had mentioned the telephone calls to the appellant.

On redirect, Detective Anderson stated that Detective Gooch did not file a supplemental report to reflect anything said during the appellant's arrest. Detective Anderson stated that the Kurdish Pride Gang was involved in "[a]ssaults, intimidation, [and] retaliation."

On recross-examination, Detective Anderson said that when the appellant was arrested, he stated that his home telephone number was (615) 781-4074. The appellant did not give a cellular telephone number, and Detective Anderson could not recall if the appellant had a cellular telephone when he was arrested.

After Detective Anderson's testimony, the State rested its case. The appellant did not put on any proof in defense. The jury found the appellant guilty of retaliation for past action. On appeal, the appellant challenges the sufficiency of the evidence, the trial court's rulings regarding the admissibility of information regarding the Kurdish Pride Gang and the appellant's membership in the gang, and the sentence imposed by the trial court.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Tennessee Code Annotated section 39-16-510(a)(1) provides that "[a] person commits the offense of retaliation for past action who harms or threatens to harm a witness at an

official proceeding . . . by any unlawful act in retaliation for anything the witness . . . did in an official capacity as witness." The appellant argues that the only proof of the charged offense was Ahmed's testimony and that Ahmed lacked credibility. However, determining the credibility of a witness is within the purview of the jury. See State v. Millsaps, 30 S.W.3d 364, 368 (Tenn. Crim. App. 2000) (stating that "the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier[ ] of fact"). In the instant case, the jury clearly resolved the issue of credibility in the State's favor. We may not now reconsider the jury's credibility assessment. See State v. Carruthers, 35 S.W.3d 516, 558 (Tenn. 2000).

In the light most favorable to the State, the proof at trial revealed that Ako and Aso Nejat were brothers and that the appellant was their cousin. Ahmed testified against Ako and Aso at trial, and the brothers were convicted. Immediately afterward, Ahmed received threatening telephone calls. Specifically, Ahmed testified that the appellant called him and threatened to kill Ahmed because of his testimony at trial. Ahmed testified that he was familiar with the appellant's voice and that he had previously spoken with the appellant on the telephone. Telephone records revealed that the number from which the call was placed was registered to the appellant's brother, Amir Nejad, whose address was 661 North Sugar Mill Drive. The appellant was later arrested at the same Sugar Mill Drive address.

Following the appellant's arrest, Detective Anderson advised the appellant that he had been arrested due to allegations that he had threatened someone. Despite Detective Anderson's not mentioning that the threats occurred over the telephone, the appellant denied telephoning anyone. Further, Detective Anderson testified that the appellant, Ako, and Aso were leaders in the Kurdish Pride Gang and that the gang engaged in "intimidation [and] retaliation." Detective Anderson also testified that the members of the gang considered themselves family and would refer to each other as "brothers." We conclude that this evidence is sufficient to sustain the appellant's conviction for retaliation for past action. See State v. Manning, 909 S.W.2d 11, 13 (Tenn. Crim. App. 1995); State v. Shanta Jones, No. W2010-01081-CCA-R3-CD, 2011 WL 5335190, at *11 (Tenn. Crim. App. at Jackson, Nov. 4, 2011).

B. Evidentiary Issues

Next, the appellant contends that the trial court erred by allowing Detective Anderson to testify about the appellant's membership and status in the Kurdish Pride Gang and the close relationship between gang members. The appellant maintains that the trial court erred by finding the evidence admissible under Tennessee Rule of Evidence 404(b), which concerns evidence of other crimes, wrongs, or acts, before allowing introduction of evidence of a gang affiliation. The appellant complains that the State introduced evidence of the

appellant's gang membership to establish the appellant's predisposition to commit the charged offense.

Tennessee Rule of Evidence 404 provides:

> (b) Other Crimes, Wrongs, or Acts. - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;
>
> (3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and
>
> (4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

See also State v. Thacker, 164 S.W.3d 208, 240 (Tenn. 2005), State v. Parton, 694 S.W.2d 299, 302 (Tenn. 1985). A trial court's decision regarding the admission of Rule 404(b) evidence will be reviewed under an abuse of discretion standard; however, "the decision of the trial court should be afforded no deference unless there has been substantial compliance with the procedural requirements of the Rule." State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997).

The record reveals that the State filed a notice of intent to introduce gang evidence pursuant to Tennessee Rule of Evidence 404(b), which included a request for a pretrial evidentiary hearing on the matter. Although the record includes the exhibits introduced at the hearing, the record does not include a transcript of the hearing or a statement of the evidence summarizing the proof adduced at the hearing.

The appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. See Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Without a transcript or statement of the evidence, which would have included the parties' arguments, the evidence presented, and the trial court's oral findings, we are unable to consider the merits of the appellant's issues regarding the introduction of gang evidence.

## C. Sentencing

Finally, although the appellant challenges the sentence imposed by the trial court, the appellant failed to include a transcript or a statement of the evidence of the sentencing hearing. Once again, in the absence of an adequate record, we are constrained to presume that the trial court correctly imposed a six-year sentence. See Tenn. R. App. P. 24(b); Oody, 823 S.W.2d at 559.

## III. Conclusion

In sum, we conclude that the evidence is sufficient to sustain the appellant's conviction. Additionally, because the record is not adequate to review the appellant's complaints regarding the admission of evidence and sentencing, we presume the trial court's rulings on those issues are correct. Accordingly, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE