IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2012

**DARREN PRICE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 02-02785     J. Robert Carter, Jr., Judge**

**No. W2011-01737-CCA-R3-PC  - Filed January 23, 2013**

The petitioner, Darren Price, appeals the denial of his petition for post-conviction relief from his convictions for attempted murder, especially aggravated kidnapping, and aggravated robbery, arguing that his trial counsel was ineffective for failing to introduce a 911 call in support of his alibi defense.  The petitioner also appeals the denial of his petition for DNA analysis of the knife, the victim's vehicle, the crime scene, and the skin of the victim, arguing that "DNA testing of these items might yield DNA for analysis that could contain evidence that would assist [him] [to] establish his innocence."  Following our review, we affirm the judgment of the post-conviction court denying the petitions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Mary Camille Hickerson, Memphis, Tennessee, for the appellant, Darren Price.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Paul Goodman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2003, the petitioner was convicted by a Shelby County jury of attempted first degree murder, attempted especially aggravated kidnapping, and two counts of aggravated robbery and was sentenced by the trial court to an effective term of forty-nine years in the Department of Correction.  This court affirmed the convictions on direct appeal but

remanded for entry of corrected judgments to reflect that the aggravated robbery convictions merged into one count. Our supreme court subsequently denied the petitioner's application for permission to appeal. State v. Darren Price, No. W2003-01447-CCA-MR3-CD, 2005 WL 314050, at *1 (Tenn. Crim. App. Feb. 9, 2005), perm. app. denied (Tenn. June 20, 2005).

Our direct appeal opinion provides the following summary of the evidence presented at trial:

The victim, . . ., left her place of employment around 9:30 on the evening of November 10, 2001. As she entered her vehicle, a two-door Ford Explorer, she noticed a foul odor that had not been present in the vehicle earlier that day. She described the smell as a combination of bad body odor and hair product. At the time, she assumed the smell was coming from discarded food bags in the backseat. She rolled down the windows and drove to a nearby video store. The victim entered the store and returned to her vehicle a few minutes later. As she got back into the vehicle and was shutting the door, an arm reached from behind her seat and placed a twelve-inch knife to her throat. At the same time, she was grabbed by her ponytail and held back against the seat. A man's voice told her not to move. The man was later identified by the victim as the [petitioner], Darren Price. The [petitioner] told her that he wanted her car and ordered her to drive him. The victim told him to take the vehicle; however, he insisted on the victim driving him to another location. The [petitioner] continued to hold the knife to the victim's throat and restrain her by her hair as he gave her instructions on where to drive. He led the victim to a dark area on a dead end street and told her to park. The [petitioner] then asked the victim if she had any money or credit cards. The victim took out her bank cards and laid them on the console. As the [petitioner] momentarily pulled the knife away in order to retrieve the items, the victim opened the door and attempted to flee. Up until this point, the victim was unable to see the [petitioner]'s face. She made it to the rear of the vehicle before "[the petitioner] was pretty much on top of [her]." As she turned around, "[the petitioner] was right in [her] face." A struggle ensued, and the victim was pushed to the ground. She was on her knees looking up at the [petitioner] as he repeatedly tried to stab her. As the victim fought back, she was pushed all the way to the ground. The victim was lying on her back facing the [petitioner] as he continued to stab her while she fought back. Eventually, the victim was able to grab the knife by the blade and remove the weapon from the [petitioner]'s hand. During the struggle, the victim received numerous cuts which required stitches. After she was able to get the knife, the [petitioner] punched her in the face as he stood over her. He "stood there for

a second looking at [the victim]" and then ran away.

Robert Williams witnessed a portion of the incident between the victim and [petitioner]. On the evening of November 10, 2001, he witnessed a sport utility vehicle park in front of an abandoned building near his residence. Williams saw a white female and a male fighting near the rear of the vehicle. He yelled at the man to stop, and the man ran toward him. As Williams stepped back into his residence, the man ran by and disappeared behind a building. Williams did not know if the man had a weapon and never got a good look at his face. Shortly after the incident, Williams told police that he thought the man was white. At trial, Williams was unsure whether the man was black or white. He described the man as dark complected. According to Williams, he may have assumed that the man was white because he noticed that the victim is white.

Officer James Kellum was dispatched to the scene sometime after 10:00 p.m. The officer found the victim crying and bleeding. She described the suspect as a black male, less than six feet tall, light complected, and wearing a baseball cap. She also stated that the suspect had a foul body odor. After conducting a search utilizing a dog and helicopter, the police were unable to locate the suspect that night. However, a day or two later, Sergeant Ralph Peperone received a memo indicating that a suspect matching the description of the perpetrator with "a very strong body odor" had been transported to a local hospital. On the morning of November 12, 2001, Peperone traveled to the hospital and came into contact with the [petitioner]. He described the [petitioner] as having a "strong body odor." Following a conversation with the [petitioner], Peperone thought that the man was a viable suspect. The sergeant prepared a photo spread containing the [petitioner]'s picture and contacted the victim. The victim picked out the [petitioner] "virtually immediately."

The [petitioner] testified that he was in the hospital recovering from an assault by his friend, Darrell Jarrett. According to the [petitioner], the assault occurred on November 10, 2001, between the hours of 10:00 p.m. and midnight. Therefore, he could not have attacked the victim. However, according to Sergeant Peperone, police records verified that Darrell Jarrett was arrested at 8:45 p.m. on November 10, 2001, and was not released until 3:00 a.m. the next day.

Id. at *1-2.

The petitioner subsequently filed a petition for post-conviction relief, which the post-conviction court summarily dismissed on the basis that it was filed outside the statute of limitations. On appeal, this court reversed the summary dismissal of the petition and remanded for an evidentiary hearing "to determine whether [the petitioner] can show by a preponderance of the evidence that he complied with Rule 28 § 2(G) [of the Rules of the Tennessee Supreme Court] in filing his post-conviction petition." Darr[e]n Price v. State, No. W2006-02233-CCA-R3-PC, 2008 WL 2065054, at *1 (Tenn. Crim. App. May 14, 2008). The post-conviction court, on remand, apparently concluded that the petition was timely and appointed counsel to represent the petitioner.

On October 13, 2010, the petitioner filed an amended petition for post-conviction relief in which he raised a generic claim of ineffective assistance of counsel and incorporated by reference his original *pro se* petition, which presumably contains his specific factual allegations of various deficiencies in counsel's performance that prejudiced his case. The petitioner did not, however, include that original petition in the record on appeal or repeat any of those factual allegations in his amended petition.

On October 14, 2010, the petitioner filed a petition requesting DNA analysis pursuant to Tennessee Code Annotated section 40-30-303 of "any evidence" in the case on the basis that a reasonable probability existed that he would not have been prosecuted or convicted if exculpatory evidence had been obtained through DNA analysis. In the petition, he mentions, specifically, the possibility of exculpatory DNA evidence from the bloody knife, from inside the victim's vehicle, or from the person of the victim. At the November 4, 2010, hearing that was held on the petition, post-conviction counsel apparently also requested that the victim's credit and bank cards be tested for potentially exculpatory DNA evidence.

On November 10, 2010, the post-conviction court entered an order denying the petitioner's request for DNA analysis of the evidence. Among other things, the court found that there was no proof that "the crime scene," the "victim's vehicle," or "the skin of the victim" were still available or in the control of the State for the purposes of DNA testing. As for the bloody knife and bank and credit cards, the court concluded that DNA analysis of those items would not aid in the petitioner's defense or establish his innocence because "[t]here [were] simply too many ways" the DNA of other individuals "could have gotten on [] the knife or the victim[']s credit cards."

On July 28, 2011, following an evidentiary hearing, the post-conviction court entered an order denying the petition for post-conviction relief. In the order, the court analyzed each of the petitioner's allegations of ineffective assistance, including counsel's failure to introduce the 911 call, before concluding that the petitioner had failed to demonstrate any deficiency in counsel's performance. With respect to the 911 call, the court found that a 911

-4-

call "Event Chronology," which the petitioner introduced as an exhibit to the hearing, did not support the petitioner's claim that he could not have been at the scene of the crime at the time of the attack. The court also noted trial counsel's testimony that he had listened to the recording of the actual 911 call and concluded that it did not support the petitioner's alibi defense. This appeal followed.

## ANALYSIS

On appeal, the petitioner contends that the post-conviction court erred in finding that he received ineffective assistance of counsel, arguing that counsel "fell below the reasonable standard of representation by failing to raise the issue of the 911 call that [the petitioner] claims is proof of his innocence." The petitioner additionally argues that the court erred by denying his request for DNA analysis of the knife, the crime scene, and the victim's credit cards because testing of those items "might yield DNA for analysis that could contain evidence" that would assist him in establishing his innocence. The State responds by arguing that the petitioner has waived appellate review of these issues by failing to include the transcripts of the evidentiary hearings in the record on appeal. We agree with the State.

The petitioner bears the burden of proving the factual allegations of his post-conviction claims by clear and convincing evidence, Tenn. Code Ann. § 40-30-103 (2012), and when an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). Here, the petitioner has failed not only to include in the record his original petition setting out his factual allegations, but also the transcript of the evidentiary hearing at which he presented his evidence in support of those allegations. It is the petitioner's duty to provide a record that is sufficient "to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal," Tenn. R. App. P. 24(b), and this court is precluded from considering issues when the record is incomplete and does not contain a transcript of the relevant proceedings before the lower court. See Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). We, therefore, assume that the findings and conclusions of the post-conviction court with respect to the petitioner's allegations of ineffective assistance are correct. Accordingly, we affirm the denial of the petition for post-conviction relief.

We also affirm the judgment of the post-conviction court denying the petitioner's request for post-conviction DNA analysis of the evidence. Under the Post-Conviction DNA Analysis Act of 2001, the court shall order DNA analysis of "any evidence that is in the possession or control of the prosecution . . ., and that is related to the investigation or

prosecution that resulted in the judgment of conviction and that may contain biological evidence," Tenn. Code Ann. § 40-30-303 (2012), if the court finds:

> (1) A reasonable probability exists that the petitioner would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis;

> (2) The evidence is still in existence and in such a condition that DNA analysis may be conducted;

> (3) The evidence was never previously subjected to DNA analysis or was not subjected to the analysis that is now requested which could resolve an issue not resolved by previous analysis; and

> (4) The application for analysis is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

Id. § 40-30-304.

As the State points out, the petitioner failed to include in the record the transcript of the evidentiary hearing that the post-conviction court held with respect to the petitioner's request for DNA analysis. As such, we agree that he has also waived consideration of this issue on appeal. Even if not waived, however, we would have no hesitation in affirming the post-conviction court's denial of the request. The post-conviction court is granted considerable discretion in its decision about whether to grant a petitioner relief under the Post-Conviction DNA Analysis Act, and this court will not reverse its judgment unless it is unsupported by substantial evidence. See Jack Jay Shuttle v. State, No. E2003-00131-CCA-R3 -PC, 2004 WL 199826, at *4 (Tenn. Crim. App. Feb. 3, 2004), perm. app. denied (Tenn. Oct. 4, 2004). We agree with the post-conviction court's conclusion that the evidence the petitioner sought to have analyzed, by its very nature, would be either unavailable for testing or would not have prevented his prosecution or established his innocence of the offenses. Accordingly, we affirm the judgment of the post-conviction court denying the petitioner's request for DNA analysis.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the post-conviction court denying the petitions for post-conviction relief and DNA analysis of

the evidence.

_____
ALAN E. GLENN, JUDGE