IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 24, 2018

## STATE OF TENNESSEE v. JENNIFER MURRAY JEWELL

**Appeal from the Circuit Court for Williamson County**
**No. I-CR116885    Joseph A. Woodruff, Judge**

_____

**No. M2017-01931-CCA-R3-CD**

_____

The Appellant, Jennifer Murray Jewell, entered a best interest guilty plea to theft of property valued over $60,000, a Class B felony. Pursuant to the plea agreement, the Appellant received a sentence of ten years to be served on supervised probation. After a hearing, the trial court ordered the Appellant to pay $100,000 in restitution by monthly payments of $861.80 during her sentence. On direct appeal, this court held that the State failed to adduce sufficient proof of the victim's loss; therefore, the case was remanded to the trial court to determine the amount of the victim's loss and restitution. On remand, the Appellant represented herself at the second restitution hearing. The trial court determined that the victim suffered a total loss of $341,122.65 and ordered restitution of $47,000, to be paid in monthly installments of $500 for the remaining ninety-four months of her probationary sentence. On appeal, the Appellant contends that she was denied her right to counsel at the second restitution hearing and that the trial court failed to consider her ability to pay in determining the amount of restitution. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Matthew J. Crigger, Brentwood, Tennessee (on appeal), for the Appellant, Jennifer Murray Jewell.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Kim R. Helper, District Attorney General; and Tammy Rettig, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## I. Factual History

### A. Guilty Plea/Original Restitution Hearing

On November 5, 2012, the Williamson County Grand Jury returned an indictment charging the Appellant with theft of property valued over $60,000 from her employer, Wilson and Associates Engineering and Surveying, P.C. ("Wilson and Associates"). On April 16, 2015, the Appellant entered a best interest plea to the charge. The plea agreement provided that the Appellant would receive a sentence of ten years, which, if approved by the trial court, would be suspended to supervised probation. The plea agreement further provided that the trial court would determine the amount of loss and restitution.

At the restitution hearing, Judge Joseph A. Woodruff[1] found that while the Appellant worked as an office manager for Wilson and Associates between 2004 and 2009, she stole $372,000. State v. Jennifer Murray Jewell, No. M2015-02141-CCA-R3-CD, 2017 WL 65242, at *1, 4 (Tenn. Crim. App. at Nashville, Jan. 6, 2017). The trial court determined that the Appellant should pay $100,000 in restitution and ordered her to pay $861.60 per month during the term of her ten-year sentence. Id. at *4.

The Appellant appealed, arguing that the trial court failed to follow statutory procedures in determining the total amount of restitution and the monthly payments, that the trial court erred in failing to consider her financial resources and future ability to pay, and that the proof regarding the amount of the victim's loss was inadequate. Id. at *5. On appeal, this court held that the trial court properly considered the Appellant's financial resources and ability to pay but that the State's proof of the victim's loss was not adequate, and the case was remanded to the trial court. Id. at *7, 10.

### B. Second Restitution Hearing

After the case was remanded to the trial court, the State filed a motion requesting a status hearing to determine the Appellant's "legal representation status and to schedule an evidentiary hearing." The State maintained that the Appellant's original counsel was no longer practicing law.

Shortly after the motion was filed, the Appellant filed a Uniform Affidavit of Indigency requesting that counsel be appointed to assist her during the second restitution hearing. On the form, the Appellant stated that she had started a job at Gibco making

---

[1] Because more than one judge was involved in the proceedings in the lower court, we have chosen to utilize the judges' names for clarity.

$40,000 per year, that she had $200 in her checking account, and that she had a 2012 Ford Focus valued at $8,000 on which she owed $8,500. Judge Michael W. Binkley found that the Appellant was not indigent and was not entitled to appointed counsel for the second restitution hearing.

On June 14, 2017, Judge James G. Martin III issued a probation violation warrant because the Appellant had been arrested for new theft offenses. On June 19, 2017, Judge Woodruff filed an order reflecting that the State and the Appellant, who "represents herself," had agreed upon a date for the second restitution hearing.

On June 30, 2017, the Appellant filed a Uniform Affidavit of Indigency requesting the appointment of counsel for the probation revocation matter. On the form, the Appellant stated that she had a job at Gibco, that she would make $40,000 per year, that her job "depends on outcome, they have not decided yet"; that she had $50 in her checking account, and that she had a 2012 Ford Focus valued at $7,000 on which she owed $9,000. Judge Binkley appointed a public defender to represent the Appellant on the probation revocation proceedings.

At a July 27, 2018 hearing regarding the probation revocation proceeding, at which Judge Binkley presided, the parties and the court discussed whether Judge Binkley or Judge Woodruff should preside over the probation revocation proceedings. Ultimately, Judge Binkley determined that he would hear the probation revocation proceedings and that Judge Woodruff would preside over the second restitution hearing.

At the hearing, Judge Binkley noted:

> I want to reiterate that [the Appellant] has chosen to represent herself at [the second restitution] hearing. We had a previous hearing where I discouraged her, at least tried to discourage her from representing herself and she chose to go ahead and represent herself even after the litany of questions that I asked her with regard to the hazards of representing herself and with regard to the presumptions of knowing the law and the procedural rules as well as the rules of evidence.
>
> So, ma'am, we will proceed that day. I've let Judge Woodruff know that I have already reviewed with you the pros and cons of representing yourself, mostly cons, and the presumptions that go along with the fact that you're representing yourself and that we've already gone through all of that so there will be no reason to reset this case for you to hire a lawyer on August 10th.

At that point, the Appellant responded, "Correct." Judge Binkley continued:

> Judge Woodruff is aware of the litany of questions that I have already asked her with regard to representing herself and the fact that I don't believe she should be doing that but she chose to do it anyway, and that she will continue to represent herself on August 10th and that would not be a reason to reset this case from August 10th to another day on the restitution or remand.

In an order filed on August 2, 2017, Judge Woodruff stated:

> With regard to the restitution matter on remand from the Court of Criminal Appeals, the Honorable Michael Binkley has advised [the Appellant] on her right to counsel. Judge Binkley found that [the Appellant] knowingly and voluntarily waived that right.
>
> . . . [The Appellant] will continue to represent herself in the [second] restitution hearing, and any change in her representation status for the [second] restitution hearing shall not form the basis of a continuance.
>
> The Probation Violation is a separate issue and will remain before the Honorable Michael Binkley.

The second restitution hearing was held before Judge Woodruff on August 10, 2017. At the beginning of the hearing, the following colloquy occurred:

> [Judge Woodruff:] Well, ma'am, you're proceeding today without legal representation.
>
> [The Appellant:] Correct.
>
> [Judge Woodruff:] You've decided to represent yourself, correct?
>
> [The Appellant:] Not necessarily decided, Your Honor. I was told to have an attorney. I could not afford one. . . . [Judge Binkley] refused to appoint one. . . . I was told to return with an attorney in 30 days but he would not appoint

- 4 -

one. I could not afford it; so, not to be in contempt of court, I had to represent myself today.

[Judge Woodruff:] Is there a Motion in the file? Well, did you fill out an affidavit of indigency?

[The Appellant:] Yes, sir, I did. I had – that date was on a Friday. I hadn't been back to work since the Tuesday prior and he considered that – my income at that – well, was going to be enough to afford an attorney and I couldn't, not within 30 days most certainly.

[Judge Woodruff:] Well, ma'am, I see an Order here in your file whereby on June 17 – I'm sorry, on June 30th, 2017, Judge Binkley appointed the Office of the District Public Defender to represent you in connection with a probation violation. He felt you were indigent and appointed legal counsel to represent you.

[The Appellant:] That's true in that matter, not in this matter.

[Judge Woodruff:] Well, if Judge Binkley appointed a lawyer to represent you in the probation violation, I am confident that he would have also appointed a lawyer to represent you in connection with the [second] restitution hearing. . . .

[State:] Judge, she initially did not qualify. It's not that she was denied an attorney. The [second restitution hearing] was reset to give her time to get an attorney, which she did not do. It was at that time she represented to the Court that she would be representing herself, and Judge Binkley engaged in a number of questions with [the Appellant] about her knowledge of the law, about the Rules of Procedure, the Rules of Evidence, and whether she was familiar with those. She answered his questions. He strongly advised her not to represent herself today, where she still insisted that she would.

The Appellant disagreed with the State, contending that she was not "adamant" about representing herself and was doing so because Judge Binkley told her she did not qualify for a court-appointed attorney and to "come back with [an attorney] in 30 days."

Judge Woodruff advised the Appellant that he would not revisit the issue and referenced an August 2 order which stated that "Judge Binkley advised [the Appellant] of [her] rights and [the Appellant] knowingly and voluntarily waived that right. . . . And that Order was prepared for entry by [the State], no counter-order was filed. So, that's the order. That's the state of the record."

Concerning the amount of restitution, Jennifer Russell testified that from April 2, 2004, to the end of 2016, she worked for Wilson and Associates as the office manager and that Jan Taylor, a former employee of the company, trained her for the position. During the training, Russell and Taylor noticed problems with the allocation of the American Express expenses. Russell noted that several employees, including the Appellant, had American Express company cards. Russell had to obtain records from the American Express company dating back to 2004. She found numerous purchases by the Appellant from 2004 to 2009 that were not legitimate business expenses. For example, the Appellant made multiple purchases of women's clothing, children's clothing, jewelry, makeup, groceries, and home supplies from retailers such as Neiman Marcus, Children's Place, Fine Jewelry at Janie, Private Edition Beauty Supplies, Kroger, Lowe's, and Home Depot.

Russell determined that the Appellant's total amount of unauthorized American Express expenditures was $332,992.63. Russell noted that while the Appellant was employed with the company, she consistently was the "highest purchaser" of the company, sometimes being responsible for forty-nine percent of a single month's purchases. Russell said that after the company discovered the fraudulent charges, American Express, "credited our account $25,000."

Russell stated that after finding the discrepancies with the American Express account, she and Taylor "started looking at everything in depth to make sure that we were starting in a correct place." Russell said that the company used Quickbooks accounting software and agreed that it was "quite easy" to have Quickbooks reflect a check as payable to a vendor or person while the physical check was payable to a different vendor or person. Russell explained that the owners were often out of town and sometimes signed blank checks to pay expenses while they were absent. Russell found that one of those checks had been recorded in Quickbooks as being issued to Davis Auto, a common vendor of the company; however, the check was written to Quality Builders to pay for refurbishments to the Appellant's home.

Jan Taylor testified that she was the office manager for Wilson and Associates from 1998 to 2005. In 2009, she returned to train Russell. The training was supposed to take approximately one month. However, the discrepancies in the bookkeeping were discovered, and Taylor stayed for six months. Taylor said that after all of the

discrepancies were discovered, the evidence was collected and turned over to the authorities.

Taylor explained that Russell was in charge of examining the American Express charges while Taylor examined the company's Quickbooks software and banking records. Taylor noticed that during the Appellant's employment, she periodically wrote checks to herself for "gifts" or "bonuses"; however, these expenditures were never authorized. Additionally, on multiple occasions the company's Quickbooks software listed a check as being payable to a vendor or one of the company's owners when the check had been written to the Appellant and deposited into her personal account. On one occasion, a check was written to Quality Builders for work performed at the Appellant's address.

Taylor noticed that although the Appellant was a salaried employee, the amount of her payroll checks was not consistent. Taylor explained that on some checks, the Appellant increased her salary, decreased the amount of federal withholding, or adjusted the amount of health savings contributions. Additionally, the Appellant sometimes added overtime pay to her check. Taylor said that the total amount of fraudulent payroll checks was $22,012.01 and that the total loss through payroll manipulation was $21,118.12. The company was reimbursed $10,000 by their insurance company.

The Appellant thoroughly cross-examined both of the State's witnesses. She also submitted as an exhibit a letter from Allpro Healthcare Solutions offering her full-time employment as a recruiter with a starting pay of $13 per hour. The letter states, "Allpro is aware of your current legal issues, and this offer is contingent upon the satisfactory resolution of your current court proceedings."

In making its ruling, the trial court noted that the Appellant initially was sentenced to ten years, which was suspended to probation. At the time of the hearing, ninety-four months were remaining on the ten-year sentence, which the trial court said impacted its "assessment of the [Appellant's] ability to pay" the restitution.

The court found that the loss from the fraudulent American Express charges totaled $332,992.52. The loss from the fraudulent checks was $22,012.01, and the loss from the fraudulent payroll checks was $21,118.12. The total loss to Wilson and Associates was $376,112.65. The company received $35,000 of insurance proceeds and a $25,000 credit from American Express, resulting in a total loss of $341,122.65.

Regarding the Appellant's ability to pay the restitution, the court began by noting that it had "always been favorably impressed with the [Appellant's] native intelligence and her ability to deal with complex issues, including financial issues, and – and the Court has always been impressed with the [Appellant's] work ethic." The court further

noted that the Appellant had filed various affidavits of indigency, which appeared to reflect that the Appellant would earn approximately $40,000, with little debt. However, the trial court was concerned by "unreliable" claims the Appellant made on the affidavits of indigency regarding her 2012 Ford Focus, noting that in April 2017, the Appellant claimed she owed $8,500 on the vehicle, which was worth $8,000; however, two months later, she alleged she owed $9,000 on the vehicle and that it was worth $7,000. The trial court noted that based on claims the Appellant made during the original restitution hearing, the car loan should have been paid by the time of the second restitution hearing. The trial court further noted that comparing the affidavits of indigency and the offer of employment made "getting a handle on the [Appellant's] income . . . somewhat problematic." The trial court concluded that the Appellant was able to pay $47,000 in restitution in monthly installments of $500 for the remaining ninety-four months of her probationary sentence.[2]

On appeal, the Appellant contends that she was denied her right to counsel at the second restitution hearing and that the trial court failed to consider her ability to pay when determining restitution.

## II. Analysis

### A. Right to Counsel

The United States Constitution and the Tennessee Constitution guarantee an indigent defendant the right to be represented by appointed counsel during a criminal trial. See U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Specifically, Tennessee Rule of Criminal Procedure 44(a) provides that "[e]very indigent defendant is entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel." Notably, an indigent defendant is entitled to have counsel appointed for a sentencing hearing, which includes the determination of restitution. See State v. Gillespie, 898 S.W.2d 738, 740 (Tenn. Crim. App. 1994); see also Tenn. Code Ann. § 40-35-102(3)(D) (explaining that restitution is a sentencing consideration).

The Appellant argues that the trial court should have appointed counsel to represent her at the second restitution hearing because she was indigent. She notes that after the order finding that she was not entitled to counsel for the second restitution hearing, she was found to be indigent and appointed counsel for the probation violation. The State argues that because the record does not contain a transcript of the hearing at which these issues were addressed, the record is insufficient for our review. We agree

---

[2] If the payment period expires and the defendant has failed to pay restitution as ordered, any unpaid portion may be converted to a civil judgment. Tenn. Code Ann. § 40-35-304(h)(1).

with the State. The Appellant carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Accordingly, we conclude that the Appellant has waived this issue.

### B. Restitution

The Appellant contends that "the trial court erred by setting the restitution amount to[o] high by failing to properly consider [the Appellant's] sever[e]ly diminished ability to pay." The State responds that the amount of restitution set by the trial court was within the Appellant's demonstrated ability to pay. We agree with the State.

Tennessee Code Annotated section 40-35-304(a) provides that "[a] sentencing court may direct a defendant to make restitution to the victim of the offense as a condition of probation." The amount must be based on the victim's pecuniary loss. See Tenn. Code Ann. § 40-35-304(b). "Pecuniary loss" consists of special damages and out-of-pocket expenses incurred by the victim relative to investigation and prosecution of the crime. Tenn. Code Ann. § 40-35-304(e). All restitution orders must be determined via the procedure in Tennessee Code Annotated section 40-35-304. See Tenn. Code Ann. § 40-35-304(g). The procedure requires, among other things, that the court "specify at the time of the sentencing hearing the amount and time of payment . . . and may permit payment or performance in installments." Tenn. Code Ann. § 40-35-304(c). The procedure also requires that the court "consider the financial resources and future ability of the defendant to pay or perform." Tenn. Code Ann. § 40-35-304(d). "[T]he trial court, in determining restitution, must also consider what the [A]ppellant can reasonably pay. An order of restitution which obviously cannot be fulfilled serves no purpose for the [A]ppellant or the victim." State v. Johnson, 968 S.W.2d 883, 886 (Tenn. Crim. App. 1997).

The trial court found that the company's loss was $341,122.65. The Appellant does not dispute this finding.

At the second restitution hearing, when the trial court was analyzing the Appellant's ability to pay, it noted that it was considering the proof adduced at the first hearing and reiterated that it had "always been favorably impressed with the [Appellant's] native intelligence and her ability to – to deal with complex issues, including financial issues, and – and the Court has always been impressed with the [Appellant's] work ethic." The court further found that the affidavits of indigency and the letter demonstrating an offer of employment "co[rro]borate the [Appellant's] work

ethic and her ability to devote herself to producing income through employment." The trial court noted that "getting a handle on the [Appellant's] income is somewhat problematic." Nevertheless, the trial court concluded that the Appellant was able to pay restitution of $47,000, to be paid in monthly installments of $500 for the remaining ninety-four months of her probationary sentence. We conclude that the trial court did not abuse its discretion in determining the Appellant's ability to pay restitution.

### III.  Conclusion

The judgment of the trial court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE